**AUTO SERVICIO SAN IGNACIO, S.R.L. and Giuseppe Campisi**

v.

**COMPANIA ANONIMA VENEZOLANA DE NAVEGACION, et al.**

**AUTO SERVICIO SAN IGNACIO, S.R.L. and Giuseppe Campisi**

v.

**HIBERNIA NATIONAL BANK OF NEW ORLEANS.**

**AUTO SERVICIO SAN IGNACIO, S.R.L. and Giuseppe Campisi**

v.

**T.R. SPEDDEN, INC., et al.**

Civ. A. Nos. 83–1461, 83–1463 and 83–1464.

United States District Court, E.D. Louisiana.

Feb. 28, 1984.

**260**

Barbara G. Danos, New Orleans, La., for plaintiffs.

Lindsay Lanaux, New Orleans, La., for Hansen & Tidemann, Inc.

Robert F. Spangenberg, IV, Metairie, La., for Aetna Cas. & Surety.

Paul M. Batiza, New Orleans, La., for Hibernia Nat. Bank.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

These consolidated actions are before the Court on motions for summary judgment by defendant and third-party defendant, Hibernia National Bank (Hibernia). Hibernia is a defendant in Civil Action No. 83–1463, and the respondent to third-party complaints filed by Hansen & Tidemann, Inc. and Aetna Casualty & Surety Company (Aetna) in No. 83–1461. Considering the memoranda submitted by the parties, the oral argument, and the law applicable to Hibernia's motions, the Court hereby grants said motions for the reasons that follow.

The facts are as follows. Hibernia acted as the advising and paying bank[1] in a letter of credit transaction that involved Banco de Maracaibo (Banco) of Venezuela as the issuer; Auto Servicio San Ignacio, S.R.L. (Auto Servicio), a Venezuelan corporation and the customer on whose behalf Banco issued the letter of credit; and Worldwide Tire Corporation (Worldwide), the beneficiary of the credit. The underlying transaction was a sale of tires from the seller-beneficiary, Worldwide, to the buyer-customer, Auto Servicio, to be shipped from New Orleans to La Guaira, Venezuela. Funds paid under the letter of credit were to cover the purchase price of the tires, which Auto Servicio never received.

Other parties involved in the underlying transaction were Compania Anonima Venezolana de Navegacio (Compania Anonima), owner and operator of the M/S ZULIA, the vessel on which the tires were to be shipped; Hansen & Tidemann, Inc., Compania Anonima's agent at all times pertinent hereto; T.R. Spedden, Inc. (Spedden), the freight forwarder for the shipment of the tires; John H. Chapman, president of Spedden; and Aetna, the insurer of the shipment of tires.

Payment for the tires was to be made through the irrevocable letter of credit that forms the subject matter of the actions herein. On March 25, 1982, Banco issued by telex a credit of $106,098.48 in favor of Worldwide for the account of Banco's customer, Auto Servicio. Pursuant to an arrangement between Banco and Hibernia, Hibernia was to advise Worldwide when the credit was issued, and to honor the draft of Worldwide upon presentation of documents conforming to those specified in the credit. The documents required and other conditions for the payment of Worldwide's draft were set out in the telex from Banco to Hibernia (as translated by Hibernia for the purpose of these motions):

(1) original "signed commercial invoice";

(2) original "complete clean set of the maritime bill of lading, indicating that the merchandise was placed on board, duly signed and sealed upon consignment

1. See note 6 infra.

by [or to] the Banco de Maracaibo ... showing shipment from ... New Orleans to ... La Guaira, Venezuela";

(3) "certificate of insurance covering all risks. Date of validity: 4/15/82";

(4) "a copy of the telex sent by the shippers [?] to the Banco de Maracaibo C.A. in Maracaibo, ... in which they indicate the date of shipment, the name of the transporting vehicle, and the value of the merchandise shipped."

The letter of credit was "payable at [Hibernia's] premises to the beneficiary upon presentation of" the above-mentioned documents. Another provision made the letter of credit "subject to all of the standard uses and rules regarding documentary credits, [U.C.P.] publication 290." The telex also authorized Hibernia to reimburse itself for the amount of the payment and its costs and fees by debiting Banco's account with Hibernia upon payment by Hibernia of the credit.

After receiving the telex on March 26, 1982, Hibernia advised Worldwide that the credit had been issued, and thereafter, on April 8, 1982, documents purportedly meeting the requirements of the credit were presented by Chapman. Zohira Estrada, Hibernia's Letter of Credit Coordinator for its International Division, reviewed the documents to determine whether they appeared on their face to comply with the terms and conditions of the credit. According to the affidavit, Estrada found that they did, and on April 9, 1982, so notified David Smith of Worldwide. Smith requested to receive payment in the form of a cashier's check, and sent Rigoberto Puertos of Worldwide to pick it up. After examining Puertos' identification, Estrada gave him Hibernia's cashiers check made to the order of Worldwide Tire Corporation, New Orleans, for $106,098.48.

Later that afternoon, Estrada was told by another Hibernia officer that Puertos had returned because tellers at Hibernia's main branch had refused to cash the check. At Puertos' request, Hibernia transferred the funds by wire to Worldwide's account with the First National Bank of Commerce in New Orleans, where Puertos subsequently cashed the check. On that same day, April 9, 1982, Estrada sent a telex to Banco notifying it that the credit had been drawn, and on April 12, Estrada sent the documents to Banco. Several days after, Chapman called Hibernia to inform Estrada of fraud in the transaction and to request that Hibernia withhold payment. Since payment had already been made, the request was made too late. On April 23, 1982, Banco telexed Hibernia asking it to cancel the credit, which request was denied. On May 5, 1982, Banco asked Hibernia to contact Worldwide, which it tried to do without success. Thereafter, there was no further contact between Hibernia and Banco.

The transaction was apparently a fraud; Worldwide did not send the tires to Auto Servicio, and David Smith and Rigoberto Puertos apparently skipped town. Auto Servicio filed three suits in this Court, two of which are relevant to these motions. In No. 83–1461, Auto Servicio alleged breach of contract of ocean carriage against Compania Anonima and negligence against Hansen & Tidemann for having issued a bill of lading with false and misleading information. Hansen & Tidemann's third-party complaint against Hibernia alleged negligence in failing to verify the authenticity of the bill of lading and negligence in honoring the letter of credit. Auto Servicio's claim against Hibernia, No. 83–1463, and Aetna's third-party complaint, No. 83–1464, are also for negligence. Hibernia moves for summary judgment on two grounds: first, that it fulfilled the duty required of an advising and paying bank to observe general banking usage and to examine the documents with care so as to ascertain that on their face they appeared to comply with the terms of the credit; and second, even if it failed in its duty, the duty was owed only to Banco, and not to the customer, Auto Servicio, or other parties involved in the underlying transaction, including Hansen & Tidemann and Aetna.

Since Hibernia argues that the documents did in fact comply with the terms of

the credit, and thus that it fulfilled the duty required of it, our consideration of the first ground of defendant's motions begins with an examination of whether there is a disputed issue of fact concerning the facial conformance of the documents. Auto Servicio, Hansen & Tidemann and Aetna allege the following facial nonconformances, mistranslations, or deviations in general banking usage by defendant:

(1) The part of the telex describing the bill of lading required for presentation was incorrectly translated. According to Auto Servicio, the proper translation is, "complete set of clean ocean bill of lading indicating that the merchandise has been placed on board duly signed and sealed consigned to the Bank of Maracaibo, C.A. Caracas Branch." The English translation appended to Hibernia's memorandum refers to a consignment not *to* but *by* the Bank of Maracaibo.[2]

(2) The sealing requirement with respect to the bill of lading, although ambiguous, was in any event not complied with.

(3) The initials "R.W.C." of Mr. R.W. Carroll next to the "on board" notation on the bill of lading constitutes a defect in the document, and were so patently inconsistent with Mr. Carroll's signature that Hibernia should have detected that forge.[3]

(4) The telex confirming actual loading and shipment of the goods was sent by the shipper (Worldwide), whereas the terms of the credit and customary practice required that it be sent by the freight forwarder, or another third party.

(5) The purported commercial invoice was inconsistent with Article 32a of the U.C.P. in that it was addressed to Banco, rather than "the applicant for the credit," Auto Servicio. Auto Servicio's name appeared on the invoice after the term "A Cuivavo," which is apparently a mistyping for "A Cuidado," meaning "care of."

(6) It was improper for the commercial invoice to have been signed by the freight forwarder, rather than the beneficiary, without Hibernia establishing the authority of the freight forwarder to sign on behalf of the beneficiary. Auto Servicio contends that without this authority, the commercial invoice should have been rejected as "irregular on its face."

(7) Similarly, the draft was patently irregular on its face in that it was signed by the freight forwarder and not the beneficiary, without proof of authority or proper endorsement to the freight forwarder.

(8) Place of payment was improper since the credit required it to be at Hibernia, whereas the money for payment of the check was transferred elsewhere, and the check was cashed elsewhere.

(9) The effective date of the insurance policy issued by Aetna was April 5, 1982, rather than April 15, 1982, as required by the credit.

The facts as thus far adduced suggest that in advising and paying the credit herein, Hibernia's practices may not have fully comported with general banking usage, and it may have accepted documents that on their face did not conform to the terms of the credit. Thus, there is a disputed issue of fact as to whether Hibernia fulfilled its duty, and accordingly, summary judgment on the first ground asserted by defendant is inappropriate.[4] We thus turn

---

2. Hibernia states, however, that the particular translation appended as attachment 1a of its memorandum was prepared for the convenience of the parties and the Court, and was not relied on by Hibernia in advising and paying on the letter of credit. Indeed, to require that there be a consignment *by* Banco would render the bill of lading useless; and in verifying the document, Hibernia did apparently examine the bill of lading to see whether the consignment was *to* Banco. See Affidavit of Estrada, at 6.

3. La.R.S. 10:5–101 et seq., and 10:5–114 in particular, place the risk of forgery by the beneficiary on the customer. See note 10 infra. For the purpose of this motion, we have included this only on the theory, which we do not necessarily accept, that the forgery may have been so blatant as to constitute a facial nonconformance.

4. In so ruling, the Court makes no comment on whether the alleged nonconformances, irregularities, or mistranslations were proximately related to the perpetration of the fraud.

to Hibernia's second ground for summary judgment, where it contends in effect that the disputed fact regarding the breach of its duty is immaterial because the duty was owed only to Banco, not to the parties who seek herein to enforce it. Since we believe this position comports with La.R.S. 10:5–101 et seq., we grant Hibernia's motions on this ground.

■ La.R.S. 10:5–109 establishes two different duties owed by an "issuer" to *"its customer"*: (1) an issuer must act in good faith and observe general banking usage; and (2) an issuer must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit.[5] When read together with La.R.S. 10:5–103 and 10:5–107(2), the terms "issuer" and "its customer" apply to two different and independent set of parties involved in this particular credit transaction. The first set is Banco and Auto Servicio, as is readily apparent from the definitions of the terms "issuer" and "customer" under 10:5–103. As the issuer, Banco owed to Auto Servicio, its customer, the duty to examine documents with care. The second relationship is that between Hibernia as the paying (confirming) bank,[6] and its customer, Banco. By confirming the credit, Hibernia acquired the rights and obligations of an issuer, La.R.S. 10:5–107(2), and under 10:5–103(1)(g), Banco became Hibernia's customer. Thus, Hibernia owed to *its* customer, Banco, the duty to examine the documents with care.

■ The statutory scheme thus establishes two independent sets of relationships: one between the issuer, Banco, and the party with whom it dealt, its customer, Auto Servicio; and one between the confirming bank, Hibernia, and the party with whom it dealt, its customer, Banco. Hibernia owed to Banco the duty to examine the documents with care, an upon fulfillment of that duty was entitled to reimbursement from Banco; Banco in turn owed a duty to Auto Servicio, and upon fulfillment of its duty, was entitled to reimbursement from Auto Servicio. Conversely, if Hibernia failed in its duty to Banco, Banco was entitled to withhold reimbursement from Hibernia; if Banco failed in its duty to Auto Servicio, Auto Servicio was entitled to withhold reimbursement from Banco. To impute to Hibernia a duty owed to Auto Servicio would be clearly inconsistent with this scheme. Thus, although Hibernia may have violated its duty under La.R.S. 10:5–109 to Banco, there was none that it owed to Auto Servicio, or for that matter, parties who were not involved in the letter of credit transaction.[7]

---

5. The corresponding provision of the U.C.P., Article 7, provides that "Banks must examine all documents with reasonable care to ascertain that they appear on their face to be in accordance with the terms and conditions of the credit...." It does not state to whom the duty is owed.

The determination of whether to make payment under the credit is to be made on the basis of the documents alone; the issuer or confirming bank is not to look beyond the documents. Accordingly, in *Schweibish v. Pontchartrain State Bank,* 389 So.2d 731, 738, *writ denied,* 396 So.2d 885 (La.App.1982), the court ruled that the issuer erred when it telephoned the customer to ask whether the term "aluminum punchings" on the bill of lading was the same as the term "aluminum scrap" used in the credit. U.C.P. Article 8(c) is consistent with this ruling: If upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, that bank must determine, on the basis of the documents alone, whether to claim that payment, acceptance or

negotiation was not effected in accordance with the terms and conditions of the credit. Thus, Hibernia was under no duty to investigate the authenticity of a document by telephoning its purported signatory, or to investigate "suspicious circumstances" to the extent that such an investigation would be beyond examining the documents.

6. Although the affidavit of Zohira Estrada states that Hibernia acted only as an "advising" and "paying" bank, the definition of which is not provided in La.R.S. 10:5–103, the services it rendered place Hibernia within the definition of "confirming bank" under La.R.S. 10:5–103(1)(f), at least for the purposes of its obligations pursuant to 10:5–109.

7. The analysis regarding the duty to examine documents with care applies as well to the duty to observe general banking usage. Both are duties owed by the issuer to its customer under La.R.S. 10:5–109, and are relevant to the issues considered herein. Further reference in the

■ The foregoing analysis of the duty owed by the respective parties under La.R.S. 10:5–101 et seq. applies to liability under Louisiana tort law.[8] Louisiana tort liability in this context is governed by the "duty-risk" doctrine. *See Walker v. Union Oil Mill, Inc.*, 369 So.2d 1043 (La.1979). However, liability cannot be imposed under this doctrine unless, inter alia, the tortfeasor had a duty toward the injured party. In this respect, the fact that Hibernia had no duty toward Auto Servicio, Hansen & Tidemann, and Aetna precludes imposing tort liability on Hibernia.[9]

These cases present the unusual situation where the cost of a wrongdoing (the fraud) must be allocated among relative "innocents" because the wrongdoer is unavailable. The temptation is to allocate the cost to the innocent party who last dealt with the wrongdoer, i.e., the party who performed the last act necessary for the successful perpetration of the fraud, and who presumably was in a position to prevent the fraud, which in these cases was Hibernia.[10] We are compelled to resist this temptation. To hold Hibernia liable to one other than its customer under these facts would disrupt the letter of credit transaction as structured by La.R.S. 10:5–101 et seq. and would hinder the commercial viability of the letter of credit. A bank in Hibernia's position would not be nearly so willing to provide its services if liability were extended to parties with whom it never dealt.

Our holding neither deprives a customer of a remedy nor allows an advising or confirming bank to breach the statement of care required of La.R.S. 10:5–109 and Article 7 of the U.C.P. The confirming bank is accountable to the issuer for improper payments made through its failure to exercise care, and the customer can refuse to reimburse the issuer if the latter fails to exercise care.

Considering the foregoing, the Court hereby grants Hibernia's motions for summary judgment, and accordingly, the complaint of Auto Servicio against Hibernia in No. 83–1463, and the third-party complaints of Hansen & Tidemann and Aetna against Hibernia in No. 83–1461 are dismissed.

The Clerk of Court is directed to enter judgment in favor of Hibernia National Bank and against Auto Servicio San Ignacio, S.R.L. and Giuseppe Campisi, dismissing the claim against Hibernia in Civil Action No. 83–1463, the parties to bear their own costs.

text to the duty to observe general banking usage was omitted as a matter of writing convenience.

8. La.R.S. 10:5–102(3) allows the application of other legal rules and concepts "to a situation not provided for" within the chapter, La.R.S. 10:5–101 et seq. For the purpose of this discussion only, we assume arguendo that the facts under which the issue herein arises present such a situation, although we recognize that this assumption may be contrary to the duty of the confirming bank to its customer under La.R.S. 10:5–109.

9. Auto Servicio further contends that Hibernia violated the warranties on transfer and present-ment, La.R.S. 10:4–207, made applicable to a confirming or advising bank pursuant to La.R.S. 10:5–111(2), because Hibernia knew that Chapman's signature on the draft was unauthorized. Under these facts, however, 4–207(1) is inapplicable because it pertains to the signature of the *maker* or *drawer*, whereas the beneficiary of the draft was the *payee*. Further, the warranties of transfer contained in 4–207(2) are to the benefit of Hibernia's "transferee [i.e. Banco] and to any subsequent *collecting bank*," which by its terms excludes Auto Servicio. (Emphasis added).

Regarding the alleged mistranslations of the terms of the credit, Auto Servicio contends that Hibernia is liable for the inaccuracies it made under La.R.S. 10:5–107(1). Although there is little guidance regarding the application of this particular provision, the Court is of the opinion that if the liability of an advising bank arises pursuant thereto, it would arise in a suit by the beneficiary to enforce the terms of the credit as transmitted by the advising bank. The Court is also of the opinion that mistranslations that result in the confirming bank verifying documents that on their face do not comply with the terms of the credit are treated under La.R.S. 10:5–109.

10. We note that the risk of fraud or forgery by the beneficiary not apparent on the face of the documents is expressly placed on the customer as the party who selected the beneficiary. See La.R.S. 10:5–114 and Official Comment thereto.