Esther WALKER, Plaintiff-Appellee, Cross-Appellant,

v.

MACCABEES MUTUAL LIFE INSURANCE COMPANY, Defendant, Cross-Appellee,

and

Continental Casualty Company, Defendant-Appellant.

Nos. 83–2535, 83–3234.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1984.

Decided Jan. 24, 1985.

---

Robert A. DuPuy, Foley & Lardner, Milwaukee, Wis., for plaintiff-appellee, cross-appellant.

Michael A. McGrath, Southfield, Mich., for defendant-appellee/cross-plaintiff-appellee.

Linda E.B. Hansen, Prosser, Wiedebach & Quale, S.C., Milwaukee, Wis., for defendant-appellant/cross-defendant-appellant.

Before BAUER and POSNER, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.*

POSNER, Circuit Judge.

This diversity suit requires us to interpret an insurance regulation of Wisconsin dealing with the continuation of insurance coverage after the termination of a group insurance policy. Walker, a full-time employee, went on sick leave on January 23, 1979, suffering from heart problems; retired on April 27 because of total permanent disability due to his heart disease, without having returned to work; and was electrocuted in an accident in his home on July 8. His employer had two group insurance policies for its employees—a life insurance policy and an accidental death and dismemberment policy. The life insurance

---

* Hon. Clement F. Haynsworth, of the Fourth Circuit, sitting by designation.

policy was with Sun Life Assurance Company of Canada and the accidental death and dismemberment policy with Continental Casualty Company (CNA). Each was for roughly $44,000 for an employee with Walker's salary. The effect of the two policies was to give an employee accidentally killed the familiar "double indemnity," which is more commonly provided in a single policy that entitles the insured to double benefits for accidental death.

Effective March 1, 1979, after Walker took sick leave but before he retired and died, the two policies that had been issued by Sun Life and CNA respectively were replaced by two similar policies issued by Maccabees Mutual Life Insurance Company. As none of the insurance companies would pay Mrs. Walker's claim under either policy, she brought this suit against all three companies. Maccabees paid off Mrs. Walker's claim under the group life policy and then filed a cross-claim against Sun, alleging that Sun and not Maccabees was really liable to her on the policy. This claim is still pending in the district court. Regarding Mrs. Walker's claim on the group accidental death and dismemberment policy, the district court granted summary judgment for Mrs. Walker against CNA and for Maccabees, holding that CNA and not Maccabees was liable under the policy. CNA has appealed, and Mrs. Walker has filed a conditional cross-appeal to challenge the finding that Maccabees was not liable, should we reverse the finding that CNA was liable.

■ Although the entire litigation was not ended by the district judge's order resolving the dispute on the accidental death and dismemberment policy, he has certified his order for an immediate appeal under Rule 54(b) of the Federal Rules of Civil Procedure. This was proper if the claim retained in the district court, relating to the group life policy, was either a separate claim from the one appealed, or a single claim but one involving separate parties from the parties to the appeal—and it was both.

■ Although the issuance of life insurance and accidental death and dismemberment insurance policies is an unusual method of providing for double indemnity for accidental death, the policies are separate contracts that could have been sued on separately in different courts, and claims under separate contracts are separate claims for purposes of Rule 54(b)—as held, with specific reference to insurance policies, in *Bertschinger v. National Surety Corp.*, 449 F.2d 746 (9th Cir.1971) (per curiam), and *Great American Ins. Co. v. Harleysville Mutual Casualty Co.*, 285 F.2d 262, 263 (4th Cir.1961). It is also the case that the claims involve separate parties. The claim retained in the district court involves Maccabees and Sun, while the claim that is the subject of the appeals before us involves Maccabees, CNA, and Mrs. Walker. The fact that the two claims have one party in common is not enough to defeat the application of the separate-parties ground of Rule 54(b). See 10 Wright, Miller & Kane, Federal Practice and Procedure § 2656, at pp. 47–48 (1983). Two claims with completely separate parties will be separate claims, so that if complete separateness of parties were required the separate-parties ground for a Rule 54(b) appeal would have no independent force—as it was intended to have in order to correct a shortcoming of the original rule. See Note of Advisory Comm. on 1961 Amendment to Rule 54(b). There is no reason why CNA and Mrs. Walker should have to wait for the outcome of the battle between Maccabees and Sun in order to get a definitive resolution of their rights.

■ The group accidental death and dismemberment policy that CNA had issued to Mr. Walker's employer (and the replacement policy issued by Maccabees) contained no provision for an extension of benefits in the event that an insured employee became totally disabled. However, Wis.Admin.Code, Rules of Comm'r of Ins., ch. 6, § 6.51(6)(a), read at the time of Walker's death that every group policy "must provide a reasonable provision for extension of benefits in the event of total disability at the date of discontinuance of the

group policy or contract during the continuance of total disability," with a qualification to which we shall turn shortly. It might seem that the quoted language would not apply to CNA, since the policy that it had issued terminated on March 1, 1979, and Mr. Walker did not become disabled till April 27. But, remarkably, CNA did not raise this point until oral argument in this court; and that was too late. Only in most exceptional circumstances will we allow a civil appellant to make a nonjurisdictional argument for the first time on appeal, see, e.g., *Parrett v. City of Connersville*, 737 F.2d 690, 698 (7th Cir.1984); *Casualty Indemnity Exchange v. Village of Crete*, 731 F.2d 457, 458 (7th Cir.1984); *Schwimmer v. Sony Corp. of America*, 637 F.2d 41, 49 (2d Cir.1980), and the circumstances here are not exceptional.

The argument that CNA has pressed throughout this litigation is that Wisconsin's extension of benefits rule as it read at the time of Mr. Walker's death is inapplicable to cases such as this where the group policy contains no extension of benefits clause. This is because of the words immediately following those we quoted earlier, "as required by the following paragraphs of this section," and by the fact that the next paragraph, section (6)(b), provides that "in the case of a group or group type life plan which contains a disability extension of any type ..., the discontinuance of the policy shall not operate to terminate such extensions." None of the other paragraphs of section 6 is pertinent.

When sections 6(a) and 6(b) are tacked together in the manner proposed by CNA, they produce the following garble: every group policy must make "reasonable provision for extension of benefits in the event of total disability at the date of discontinuance of the group policy ... as required by the following paragraphs of this section ...[:] in the case of a group ... life plan which contains a disability extension of any type ..., the discontinuance of the policy shall not operate to terminate such extensions." The part before "as required" compels the insurance company to provide for extension of benefits after termination of

the policy, and the part after retracts this requirement by stating that *if* the group policy contains an extension of benefits provision the termination of the policy will not affect it. We have to choose between two inconsistent provisions.

■ We agree with the district court that the first ought to take precedence. The Wisconsin Commissioner of Insurance, who issued this regulation, was worried about the situation of someone who, being totally disabled on the date that a group insurance policy terminates, is unlikely either to be insurable or to be able to find the money to pay for the replacement insurance that he desperately needs. So the Commissioner required that the insurance company extend the coverage of the policy for the duration of the total disability; and Mr. Walker was still totally disabled when he died and his death benefits became due. The Commissioner's purpose would be set at naught if the insurance company could avoid the duty to extend benefits by the extremely simple expedient of not writing an extension of benefits clause into the policy. In fact the regulation would be rendered completely nugatory. Maybe it was meant to be nugatory—a promise to the eye only, like the grapes of Tantalus. But the alternative hypothesis that the regulation was simply botched in the drafting process is the more plausible, especially since we are dealing with an administrative regulation rather than a statute; the regulation may have been drafted more casually than a statute would have been.

Section 6(a) was rewritten in 1982 to make it state unequivocally that "a group policy shall, if a covered employee or dependent is totally disabled at the date of termination of the policy, provide an extension of coverage for the individual." (The rewritten provision is not applicable to this case.) The Commissioner explained that her purpose was "to revise the provisions of Ins. 6.51," and that "portions of the language have been simplified, corrected, and clarified. In some cases the provisions have been updated to be consistent with

current practice and policy." Although this explanatory language is consistent with a complete redirection of the thrust of section 6, as argued by CNA, we think that if this had been the purpose of the amendment the Commissioner would have flagged it a little more conspicuously than she did.

AFFIRMED.