**BANQUE PARIBAS, Plaintiff-Appellant,**

v.

**HAMILTON INDUSTRIES INTERNATIONAL, INC., Defendant-Appellee.**

Nos. 84–1477, 84–1559.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1985.

Decided July 22, 1985.

---

Dumbauld, Senior District Judge, concurred and filed opinion.

Shalom L. Kohn, Sidley & Austin, Chicago, Ill., for plaintiff-appellant.

Joel G. Chefitz, Kirkland & Ellis, Chicago, Ill., for defendant-appellee.

Before POSNER and COFFEY, Circuit Judges, and DUMBAULD, Senior District Judge.[*]

POSNER, Circuit Judge.

This appeal presents a dispute over an international letter of credit. For general background see Rubenstein, *The Issuer's Rights and Obligations Under a Letter of Credit*, 17 UCC L.J. 129 (1984); Note, *Confirming Bank Liability in Letter of Credit Transactions: Whose Bank Is It Anyway?*, 51 Ford.L.Rev. 1219 (1983). Hamilton Industries International, a Wisconsin corporation, bid for a subcontract with Saudi Medcenter, Ltd. (SMC), a Saudi Arabian corporation that had bid on a contract to do construction work for a Saudi Arabian university. SMC required that Hamilton's bid be guaranteed. Bid guarantees are common in construction work. If the contractor has to guarantee his bid (as in fact Saudi Arabian law requires, see Gnichtel, *The Intricacies of Performance Guarantees in Saudi Arabia*, 100 Banking L.J. 354, 355 (1983)), he will want guarantees of his subcontractors' bids. If Hamilton backed out of its deal with SMC, the latter might not be able to make good on its bid guarantee at all, and at least would have to make a new subcontract with someone else, maybe on much worse terms.

[*] Hon. Edward Dumbauld of the Western District of Pennsylvania, sitting by designation.

Hamilton obtained a letter of credit from American National Bank in Chicago for $290,700, the amount of security demanded by SMC (equal to one percent of . the amount of Hamilton's bid). This is what is called a "standby" letter of credit, as its purpose was to provide security for the beneficiary, SMC, against a default by its supplier, Hamilton. The letter of credit names the Bahrain branch of the Banque de Paris et des Pays-Bas (Paribas) as "advising" bank, and states that American National Bank will pay Paribas the amount of the letter of credit upon Paribas' demand if accompanied by "your [Paribas'] signed statement certifying that you have been called upon to make payment under your guaranty issued in favor of" SMC. As the letter of credit thus contemplates that Paribas will pay the beneficiary of the letter of credit (SMC), pursuant to Paribas' guarantee, and then be reimbursed by American National Bank, the issuing bank, Paribas' actual status was probably that of a "confirming" rather than "advising" bank. See *Auto Servicio San Ignacio, S.R.L. v. Compania Anonima Venezolana de Navegacion,* 586 F.Supp. 259, 263 n. 6 (E.D.La. 1984). An alternative characterization is that the guarantee was actually a letter of credit issued by Paribas, with American National Bank the beneficiary. We shall see that for purposes of deciding this appeal nothing turns on whether Paribas is deemed the confirming bank or the issuer of a second letter of credit of which the American National Bank was the beneficiary.

The letter of credit issued by American National Bank states, "we have issued the above letter of credit in your favor in consideration of your [Paribas'] issuance of a letter of guarantee in favor of" SMC, the letter "to expire on February 28, 1983" and to be "in accordance with Exhibit A attached." Exhibit A is a "Form of Tender Letter of Guarantee," addressed to SMC, and intended to be signed by Paribas. The critical undertakings in the guarantee are the following: "we the Guarantor hereby unconditionally agrees [ *sic* ] to pay to you forthwith following demand made by you

in writing (which writing shall refer to the number and date of this letter of guarantee) to our agent" the amount guaranteed, i.e., $290,700; and "the Guarantor's Agent must receive your written demand hereunder within the period of the effectiveness of this letter of guarantee"—i.e., no later than February 28. The letter of credit itself was to expire on March 15. The guarantee recites that it shall be construed in accordance with Saudi Arabian law.

Paribas retyped the guarantee on its own letterhead, signed it, and sent it to SMC. On February 24, 1983, SMC telephoned Paribas, demanding payment under the guarantee. Paribas cabled American National Bank the same day advising it that Paribas had been called upon to pay SMC under the terms of the guarantee, and requesting American National Bank to treat the cable as Paribas' formal demand for payment to it under the letter of credit. Before the letter of credit expired on March 15 Paribas followed up the cabled demand to American National Bank with a signed written statement certifying that Paribas had been called on to make payment to SMC in accordance with the guarantee.

According to Paribas, on February 28, the last day on which the guarantee was in force, Paribas received the following telex from SMC: "Subject: King Saud Project.... This confirms the telephone conversation the undersigned had with you this afternoon, wherein it was requested that the letter of credit established by Hamilton Industries in favor of SMC in connection with a bank guarantee on the above subject be called off." Paribas' deputy manager in Bahrain testified by affidavit that this telex was intended (despite the wording, which suggests the opposite, and the discrepancy in dates) to confirm the telephone demand of February 24 for payment of the guarantee. But it was not until March that SMC sent Paribas a written demand that actually recited the number and date of the guarantee. Although the guarantee had expired, Paribas paid SMC anyway, and then repeated its de-

mand for reimbursement by American National Bank, which refused and brought this suit.

The suit bases jurisdiction on diversity; interpleads Hamilton, SMC, and Paribas under Rule 22 of the Federal Rules of Civil Procedure; and asks the court to decide who is entitled to the $290,700 that American National Bank has refused to pay Paribas. Since Hamilton has agreed to hold American National Bank harmless should American be ordered to pay Paribas, the real fight is between Hamilton and Paribas. A separate fight between Hamilton and SMC over the subcontract is not involved in this appeal.

■ On Hamilton's motion for summary judgment against Paribas, the district court held that Paribas had paid SMC under the guarantee in violation of the terms of the letter of credit. 583 F.Supp. 164 (N.D.Ill.1984). It reasoned as follows: the guarantee was a part of the letter of credit, so that American National Bank was not obligated to make good on the letter of credit unless Paribas complied with the terms of the guarantee; Paribas had failed to comply with those terms, by paying SMC even though the only written demand that SMC had made before the guarantee expired—the telex of February 28—contained no reference to the number and date of the guarantee. Having concluded that Paribas was not entitled to payment from American National Bank under the letter of credit, the district court dismissed as moot Hamilton's cross-claim against Paribas (a claim we take up at the end of this opinion). The court certified both of its orders—the order granting Hamilton's motion for summary judgment against Paribas and the order dismissing Hamilton's cross-claim as moot—under Rule 54(b) of the Federal Rules of Civil Procedure for immediate appeal. This was proper, since the two orders, between them, disposed of the entire dispute between Paribas and Hamilton. *Walker v. Maccabees Mutual Life Ins. Co.,* 753 F.2d 599, 601 (7th Cir.1985).

■ The parties have treated us to a learned debate on many fine points of commercial law, but it seems to us that the decision of this appeal must turn on the simple principle that a contract dispute cannot be resolved on summary judgment when the meaning of the contract depends on the interpretation of ambiguous documents and can be illuminated by oral testimony. *Fitzsimmons v. Best,* 528 F.2d 692, 694 (7th Cir.1976). The critical issue on which Paribas' right to reimbursement for the money it paid out to SMC turns is whether it was a condition precedent to that right that Paribas receive a written demand from SMC specifying the date and number of the guarantee that Paribas had issued to SMC. This issue can be decomposed into two questions: Did the guarantee make such specification a condition precedent? If so was the guarantee meant to be incorporated in American National Bank's letter of credit, which defines Paribas' right of reimbursement? Only if both questions can be answered "yes" on the record of the summary judgment proceeding was Hamilton entitled to summary judgment.

1. Conceivably, although improbably, the requirement in the guarantee of a written demand that "shall refer to the number and date of this letter of guarantee" is solely for the protection of the guarantor, Paribas, and waivable by it, rather than even partly for the protection of American National Bank. (The expiration date on the letter of credit is an example of a provision clearly intended for the protection of the issuing bank, American National Bank, and its customer, Hamilton.) If Paribas in response to an incomplete written demand paid the wrong person or paid too much, it would be stuck; it could not get reimbursement from American National Bank. See *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.,* 707 F.2d 680, 686 (2d Cir.1983). But as a matter of fact it paid the right amount to the right person, and it is not obvious why American National Bank (or Hamilton) should benefit from Paribas' risk-taking. It was not, to repeat, a risk taken with American National Bank's money or Hamilton's money, since

if Paribas made a mistake it would be its mistake, and it would bear the cost. True, there is another problem with the demand. The telex of February 28 is mysterious; on its face, it isn't a demand at all. But its sufficiency is not an issue that can be resolved on summary judgment. Maybe in light of earlier phone conversations, in particular the one on February 24, the telex was perfectly clear.

■ All this, however, may take too narrow a view of the situation. It ignores the long tradition (on which see, e.g., *Philadelphia Gear Corp. v. Central Bank*, 717 F.2d 230, 236 (5th Cir.1983)) of requiring strict compliance with the terms of a letter of credit, a tradition which, though challenged, see, e.g., *Tosco Corp. v. FDIC*, 723 F.2d 1242, 1248 (6th Cir.1983), as so many of the strict requirements of the law are challenged nowadays, has managed to retain its vitality. See, e.g., *Beyene v. Irving Trust Co.*, 762 F.2d 4, 6 (2d Cir.1985). We may assume, without affecting our decision, that it continues in full force. In defense of the traditional approach it can be pointed out that since the customer of the issuing bank may have no practical recourse against the beneficiary of the letter of credit who makes a fraudulent demand for payment under it—Hamilton might have trouble obtaining relief from a Saudi Arabian corporation, though in fact it is litigating with SMC in the district court—the customer depends on the issuing bank to scrutinize the demand for payment with great care and to insist upon literal compliance with all the conditions on payment. This case may seem different in that the customer has the additional protection represented by the confirming bank, but the additional protection may be quite illusory. That bank may be a local firm in cahoots with the beneficiary, yet once it pays the beneficiary the issuing bank has to reimburse it. This makes it all the more important that the confirming bank be required to comply with the literal terms of the letter of credit, to minimize the likelihood that a fraudulent demand for payment will be made and accepted.

■ This insight may lie behind the rule that the confirming bank has the same obligations to the issuing bank, viewed as its customer, as the issuing bank has to the original customer. See, e.g., *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A., supra*, 707 F.2d at 686; *Auto Servicio San Ignacio, S.R.L. v. Compania Anonima Venezolana de Navegacion, supra*, 586 F.Supp. at 263; *Instituto Nacional de Comercialization Agricola (Indeca) v. Continental Illinois Nat'l Bank & Trust Co.*, 530 F.Supp. 279, 282–83 (N.D.Ill.1982). It thus would make no difference whether Paribas was a confirming bank, as we have suggested was probably the case, or the issuer of a second letter of credit (the guarantee) of which American National Bank was the beneficiary, which would make this a case of "back to back" letters of credit. Paribas' obligations, and the argument for insisting on strict compliance, would be the same. Cf. *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir. 1970).

But the argument for strict compliance comes up against an insuperable obstacle in the present case: the stipulation in the guarantee that it is to be interpreted in accordance with Saudi Arabian law. Hamilton does not argue that such a stipulation is unenforceable. And according to the affidavit by Paribas' deputy manager in Bahrain, under Saudi law the guarantee, despite its apparently clear wording, would have required Paribas to pay SMC in response to an oral demand (provided that the documents specified in the letter were furnished later, as they were), because the mails are very uncertain in Saudi Arabia. The affidavit, which was competent and uncontradicted though not conclusive evidence of foreign law, suggests—not implausibly in light of what little we have been able to learn about the commercial law of Saudi Arabia on our own, cf. Gnichtel, *supra*, 100 Banking L.J. at 356–59—that Saudi Arabia does not insist on strict compliance even with guarantees incorporated in letters of credit; substantial compliance, generously construed, is quite

enough. Supposing this is so—a hypothesis that the district judge was not entitled to reject when no contrary evidence had been introduced, or independent research into Saudi law conducted by him—Paribas could not be refused reimbursement by American National Bank. It would put Paribas in an intolerable position for the courts to say, your obligations to SMC are governed by the guarantee as interpreted under Saudi law but your rights against American National Bank are governed by the guarantee as inconsistently interpreted under American law. The effect would be to make Paribas rather than Hamilton the ultimate guarantor of Hamilton's subcontract with SMC; and that was no one's intention.

■ Of course Paribas would deserve no judicial sympathy if it were in cahoots with SMC to obtain money from Hamilton though no default had occurred. Fraud is a defense to payment of a letter of credit, see, e.g., *Harris Corp. v. National Iranian Radio & Television*, 691 F.2d 1344, 1354–55 (11th Cir.1982); *Bank of Newport v. First Nat'l Bank & Trust Co.*, 687 F.2d 1257, 1260–63 (8th Cir.1982), and has been a hot issue in connection with another Middle Eastern country recently. See Kimball & Sanders, *Preventing Wrongful Payment of Guaranty Letters of Credit—Lessons From Iran*, 39 Bus.Lawyer 417 (1984). Maybe at trial American National Bank and Hamilton can prove that Paribas schemed with SMC to defraud Hamilton, but this question cannot be decided on a summary judgment record that contains, in fact, no evidence of fraud. It would be premature for us to attempt to determine the outer bounds of the defense of fraud in this setting, on which see the interesting discussion in Comment, *The Independence Rule in Standby Letters of Credit*, 52 U.Chi.L.Rev. 218, 226–46 (1985).

2. Even if, contrary to what we have said, Paribas violated the guarantee as a matter of law when it paid SMC, it would not follow that Paribas violated the terms of the letter of credit. The issue would then be, did the parties intend the guarantee to be incorporated in the letter of credit, so that compliance with the guarantee was required for compliance with the letter of credit? Unresolved factual questions make it impossible to resolve this issue on summary judgment.

The letter of credit—explicitly anyway—attaches only one condition to paying Paribas: that before the date of expiration of the letter on March 15 Paribas submit a "signed statement certifying that you have been called upon to make payment under your guaranty issued in favor of" SMC. Paribas mailed such a statement to American National Bank on February 28, which was well before the expiration date of March 15; American National Bank acknowledged the receipt of the statement by telex sent on March 15. There thus was literal compliance with the terms of the letter of credit; whether more was required cannot be resolved on the record of the summary judgment proceeding.

The district court thought that the cable Paribas sent American National Bank on February 24 advising that it had been called on to make payment to SMC "under the terms of your letter of credit" was a false representation that disentitled Paribas to payment under the letter of credit. However, there was no falsity if the letter of credit did not incorporate the guarantee (or if, as discussed above, Paribas did not violate the guarantee). The letter of credit does not in words make payment conditional on compliance with every detail of the guarantee; the guarantee is described merely as consideration for American National Bank's promise to pay Paribas upon demand. It is possible that the purpose of all this is to incorporate the guarantee in the letter of credit, but no more than possible. After all, the guarantee was intended for SMC's protection rather than Hamilton's. Maybe therefore the parties did not intend to condition Paribas' right to payment under the letter of credit on strict compliance with the conditions in the guarantee.

■ To summarize, we are clear neither that Paribas paid SMC in violation of

the guarantee nor that a violation of the guarantee would automatically violate the letter of credit. Interpreted as it must be in accordance with Saudi Arabian law, the guarantee is ambiguous; and the letter of credit is ambiguous as to whether it incorporates the guarantee. Ambiguities in a letter of credit, as in other contracts, are resolved against the drafter, in this case American National Bank, *United States v. Sun Bank*, 609 F.2d 832, 833 (5th Cir.1980) (per curiam), which therefore was not entitled to summary judgment. On remand, the district court should first determine, in accordance with Rule 44.1 of the Federal Rules of Civil Procedure, whether there was any violation of the guarantee, when that guarantee is interpreted in accordance with Saudi Arabian law. If not, then unless some fraud between Paribas and SMC is shown, Hamilton's claim against Paribas must be rejected. If there was a violation of the guarantee, the issue whether the guarantee was incorporated in the letter of credit will then become material and will be an issue for trial since the letter is ambiguous.

The district judge dismissed Hamilton's cross-claim against Paribas as moot, an action Hamilton challenges on the ground that Paribas' payment of the guarantee to SMC imposed certain costs on Hamilton, so that even if it does not have to make good the $290,700 to Paribas (via American National Bank) it still has a dispute with Paribas. Since the finding of mootness is based on an order (holding that Paribas is not entitled to reimbursement of the $290,700 from Hamilton) that we are reversing, the order dismissing the cross-claim must also be reversed. Costs in this court are awarded to Paribas.

REVERSED AND REMANDED.

DUMBAULD, Senior District Judge, concurring:

I concur in the reversal and remand, since the question whether the letter of credit incorporated the guarantee is thereby left entirely open, and can be decided in favor of Paribas unless the evidence at trial indicates otherwise.

In my view, the letter of credit is a totally independent instrument, with regard to which certainty and formality and strict interpretation are appropriate, as in negotiable instruments generally, for the encouragement of commerce.

I regard the reference to a guarantee "in accordance with Exhibit A attached" as a mere specification, like the form book appended to the Federal Rules of Civil Procedure. The issuance of such a guarantee is the consideration for the letter of credit. The only condition on payment is a timely written demand referring to the number and date of the letter of credit, and reciting that Paribas had been called upon to pay. Paribas did comply with these conditions and is entitled to receive payment accordingly.[1]

But if my interpretation is sound, it will rest on all the stronger ground if the facts are fully developed at trial, rather than resting on documents and on affidavits. Perhaps the words "in accordance with" are ambiguous and should be construed against their author (though that argument would really favor Paribas).

---

1. By the letter of credit American National Bank and Trust Company of Chicago promised to pay upon receipt of sight draft(s)

 bearing the clause "Drawn under American National Bank and Trust Co. of Chicago L/C No. 202326 dated Chicago August 11, 1982 when accompanied by the following documents: your signed statement certifying that you have been called upon to make payment under your guaranty issued in favor of Saudi Med Center.... We have issued the above letter of credit in your favor in consideration

of your issuance of a letter of guarantee in favor of: Saudi Med Center ... to expire on February 28, 1983 at the request of our customer Hamilton Industries International, Inc. in accordance with Exhibit A attached herewith."

 The specified "EXPIRY DATE" of the *letter of credit* is March 15, 1983. Paribas sent its draft and signed statement on February 28, 1983 (Appendix, 48, 59–62). A telex of March 15, 1983, from American National confirmed receipt of the documents. (Appendix, 31).

In any event I have no hesitation in joining in reversal and remand to the District Court.