UNITED STATES GENERAL, INC.,
Plaintiff-Appellant,

v.

Franklynn B. ALBERT and James M.P. D'Amico, Defendants-Appellees.

No. 85–1687.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1985.

Decided June 6, 1986.

Rehearing and Rehearing In Banc
Denied July 16, 1986.

Paul T. Fox, Holleb & Coff, Ltd., Chicago, Ill., for plaintiff-appellant.

Stephen C. Carlson, Sidley & Austin, Chicago, Ill., for defendants-appellees.

Before WOOD, Circuit Judge, ESCHBACH, Senior Circuit Judge, and CAMPBELL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant United States General, Inc. ("USG"), appeals the district court's grant of summary judgment in favor of defendants-appellees Franklynn B. Albert and James M.P. D'Amico. The district court found that USG's claims against Al-

bert and D'Amico were barred, as a matter of law, because the defendants were immune from suit. Pursuant to Fed.R.Civ.P. 54(b), the district court entered an order of final judgment with respect to these defendants. We dismiss USG's appeal because we find that the district court abused its discretion in ruling that its grant of summary judgment was appealable under Rule 54(b).

## I.

This appeal represents only a small part of a much larger lawsuit initiated by USG in November 1975 against the City of Joliet, Illinois, and its mayor, councilmen, Director of Community Development Franklynn Albert and Corporation Counsel James D'Amico. USG, a Wisconsin corporation engaged in the development and construction of housing, alleged that the defendants had unlawfully prevented it from constructing a plan of public housing in Joliet. USG filed a seven-count complaint in the district court seeking relief on a variety of theories for injuries it sustained when Joliet enacted a resolution placing a moratorium on the issuance of building permits for federal housing projects. Counts I, II and IV of USG's complaint, alleging violations of various civil rights statutes and federal constitutional provisions, were eventually dismissed for lack of standing by Judge Prentice Marshall who was then presiding over this action. *United States General, Inc. v. City of Joliet,* 432 F.Supp. 346, 350–54 (N.D.Ill.1977). Judge Marshall did rule, however, that USG had standing to bring Counts III, V, VI and VII. *Id.* Counts III, V and VII allege, respectively, violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, tortious interference with contractual rights, and violations of Art. I, § 17 of the Illinois Constitution.[1] Count VI involves a claim against the City of Joliet based on promissory estoppel.

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. Count V was initially dismissed for failure to allege the giving of timely notice as required under the Illinois Tort Immunity Act, Ill.Rev. Stat. ch. 85, ¶ 1–101 *et seq.* USG subsequently amended its complaint to cure this defect.

USG's action was later assigned to Judge Charles Kocoras who ultimately granted summary judgment in favor of defendants Albert and D'Amico on Counts III, V and VII on grounds that they enjoyed qualified immunity from liability. Prior to the entry of final judgment, this case was reassigned to Judge Ilana Rovner.[2] Judge Rovner found that, pursuant to Fed.R.Civ.P. 54(b), the entry of an order of final judgment with respect to defendants Albert and D'Amico was appropriate. The court concluded that such an order was proper since the "decided claims against Albert and D'Amico are separate and distinct from those remaining in the case because summary judgment was based on the qualified immunity defense, and no other parties in the case occupied positions similar to those held by these two defendants." Mem.Opin. at 5. USG appeals from this entry of final judgment.

## II.

Although the parties do not raise the issue, because it involves the scope of our appellate jurisdiction, we must consider on our own initiative whether the district court's entry of final judgment is warranted under Rule 54(b). *See Jack Walters & Sons Corp. v. Morton Building, Inc.*, 737 F.2d 698, 701 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984); *Landry v. G.B.A.*, 762 F.2d 462, 463 (5th Cir.1985) (per curiam). If we find that the entry of final judgment was improper, the present appeal must be dismissed.

In pertinent part, Rule 54(b) provides:

When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

It is well-established that "Rule 54(b) entries are not to be made routinely or as an accommodation to counsel." *Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1286 (7th Cir.1980) (citing *Schaefer v. First National Bank of Lincolnwood*, 465 F.2d 234, 235 (7th Cir.1972) (per curiam)). As one court has noted, Rule 54(b) "is not to be used without due deliberation." *Solomon v. Aetna Life Insurance Co.*, 782 F.2d 58, 60 (6th Cir.1986).

In *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), the Supreme Court reiterated the process a district court must go through in making determinations under Rule 54(b). First, the court must determine if it has reached a "final judgment." In the context of multi-claim litigation, the court's ruling "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* at 7, 100 S.Ct. at 1464 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)). Similarly, a decision with respect to an individual party in multi-party litigation is final when

---

**2.** Judge Rovner noted that there was a difference of opinion with respect to the extent of Judge Kocoras's grant of summary judgment in favor of Albert and D'Amico. USG argued that summary judgment was ordered only as to Count III. The defendants argued that Judge Kocoras's order of summary judgment applied to all three counts against them. Judge Rovner, after reviewing Judge Kocoras's Memorandum and Order, clarified the matter as follows:

Judgment was entered in favor of Defendants D'Amico and Albert on Count III because Defendants established, as a matter of law, good faith immunity. Defendants D'Amico and Al-

bert were also granted summary judgment in their favor on Counts V and VII, although for a different reason. On Counts V and VII, defendants D'Amico and Albert were entitled to summary judgment in their favor because defendants established, as a matter of law, qualified good faith immunity under the Illinois Tort Immunity Act, Ill.Rev.Stat. ch. 85, ¶ 1–101, *et seq.* Accordingly, summary judgment was entered in defendants D'Amico's and Albert's favor on all claims raised in the complaint.

Mem. Opin. at 2 n. 1 (citations to Judge Kocoras's order omitted).

the claims regarding that party's rights and liabilities have been fully resolved. *See Duckworth v. Franzen*, 780 F.2d 645, 648–49 (7th Cir.1985).

 After determining that it is dealing with a final decision, the district court must then ascertain whether "there is any just reason" for delaying an immediate appeal. *Curtiss-Wright*, 446 U.S. at 8, 100 S.Ct. at 1464. In making this determination, the court, considering both "judicial administrative interests as well as the equities involved," *id.*, must "weigh the virtues of accelerated judgment against the possible drawbacks of piecemeal review." *Local P–171, Amalgamated Meat Cutters and Butcher Workmen of North America v. Thompson Farms Co.*, 642 F.2d 1065, 1072 (7th Cir.1981). Factors the court should take into consideration include, among others, "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals."[3] *Curtiss-Wright*, 446 U.S. at 8, 100 S.Ct. at 1465 (footnote omitted). If the district court concludes that there is no just reason for delay, it must make a specific finding to that effect and also make "an express direction for the entry of judgment." Fed.R.Civ.P. 54(b). *See Great*

*American Trading Corp.*, 629 F.2d at 1286 (district courts making Rule 54(b) entries are generally "required to state specific reasons in support of their conclusion that an immediate appeal [is] necessary.").

On appeal, we must review the district court's determination that the final judgment requirements of Rule 54(b) have been met. *See* 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2655, at 40–43 (2d ed. 1983). Pursuant to 28 U.S.C. § 1291, this court has jurisdiction only over final judgments of the district court, and, accordingly, we are required to review *de novo* the district judge's determination on this issue. *Stearns v. Consolidated Management, Inc.*, 747 F.2d 1105, 1108 (7th Cir.1984). If we agree with the district court that its decision is final, we must then determine whether that court abused its discretion in certifying the decision as ready for appeal. *Curtiss-Wright*, 446 U.S. at 8, 10, 100 S.Ct. at 1464, 1466 (noting that the determination of the time of an appeal is appropriately left to the sound discretion of the district court and that "the proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record"); *Bank of Lincolnwood*, 622 F.2d at 948. Accordingly, only if we conclude that the district court abused its discretion in ordering the entry

---

**3.** In *Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944 (7th Cir.1980), we noted that the Third Circuit has compiled an extensive, although not all-inclusive, list of factors the district court may consider in determining whether there is any just reason for delaying the entry of final judgment including

(1) The relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial,

frivolity of competing claims, expense, and the like.

622 F.2d at 949 (quoting *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 364 (3d Cir.1975)).

Although in *Bank of Lincolnwood* we dealt with a multi-claim situation, we are unable to find any case which holds that the factors the district court should consider in ascertaining whether there is no just reason for delay must, so long as they are relevant, vary depending upon whether the case involves multiple claims or multiple parties or both. Similarly, the commentators apparently draw no such distinction. *See* 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2659 (2d ed. 1983); 6 J. Moore, Moore's Federal Practice ¶ 54.41[3] (2d ed. 1985).

of a final judgment should the appeal be dismissed.

█ In the present case, we agree with the district court that the grant of summary judgment in favor of Albert and D'Amico was a final decision with respect to their liabilities. Our focus, therefore, is on whether the court abused its discretion in certifying this decision for appeal.

The district court found that the claims against Albert and D'Amico were sufficiently separate and distinct to justify the entry of final judgment. Although we concur with much of the court's well-reasoned opinion, we believe that it does not go far enough in analyzing the issue. Early in the litigation of this case, Judge Marshall ruled that USG had standing to bring certain of its claims against the various defendants, including Albert and D'Amico. The issue of standing has never been before this court and is not directly raised by the parties in this appeal. Although we express no opinion regarding the proper resolution of this issue now, we do not believe it appropriate to rule on the question of Albert's and D'Amico's qualified immunity before this court has had a chance to determine if USG had standing to bring its suit in the first place.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). *See Bender v. Williamsport Area School District,* —— U.S. ——, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (appellate court must determine whether party seeking to invoke its jurisdiction has "a sufficient stake in the outcome of the litigation to support appellate jurisdiction"). Without the issue of standing properly before us, we are reluctant to ignore it and proceed directly to a consideration of the merits of the defendants' qualified immunity defense. If the issue of standing is decided against USG, resolution of the immunity question would become unnecessary. To avoid resolving an issue that may become irrelevant, we think the proper course is not to reach the immunity issue now, but rather wait until, if ever, the issue of USG's standing is before this court.[4]

After briefing by the parties, we could, of course, rule solely on the standing issue as it relates to Albert and D'Amico, and then, if necessary, reach the question of immunity. However, because the issue of

---

4. Although USG understandably did not raise the issue of its own standing in challenging the defendants' motion under Rule 54(b) in the district court, it did contend that the motion was untimely and that the defendants failed to articulate any substantial reason for certification other than the allegedly inadequate desire to extricate themselves from this litigation. On the other hand, as defendants' counsel conceded at oral argument, standing is an issue which they could challenge on appeal after a decision on all of USG's claims is rendered by the district court. It is also evident that the defendants fully understand the importance of the standing question to a proper resolution of the present appeal.

For example, both Albert and D'Amico rely on *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), to support their claim of qualified immunity from liability under Count III. In *Harlow* the Supreme Court held that "government officials performing discretionary functions ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established stat-

utory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. The defendants, apparently implying that the district court's decision on USG's standing is suspect or is at best a novel ruling, note that "until Judge Marshall's ruling in this very lawsuit no court had held that a for profit corporate developer like USG which is not seeking to build housing and is not joined by potential occupants of such housing even has standing to seek damages on any Fair Housing Act claim, let alone that conduct such as Albert's or D'Amico's actually violates any clear rights of parties like USG under the Fair Housing Act." Defendants-Appellees Br. at 34 (citation and footnotes omitted). From this Albert and D'Amico conclude that they are entitled to immunity under *Harlow* since "[a] party [i.e., USG] who has no legal standing to assert a claim has no established rights which have been violated." *Id.* at 34 n. *. The fact that an argument can be raised which ties the issues of standing and immunity together, in and of itself, reinforces our belief that these issues should not be considered separately.

USG's standing to bring suit against Albert and D'Amico is so interrelated with the issue of USG's standing as against the other defendants, we believe that such a ruling could involve this court in unwarranted piecemeal appellate review.[5] *See Curtiss-Wright*, 446 U.S. at 10, 100 S.Ct. at 1466, *Solomon*, 782 F.2d at 62 (in determining whether summary judgment in favor of one party in multi-party action was properly certified under Rule 54(b) where district court failed to give reasons for certification, appellate court noted that "judicial economy will best be served by delaying appeal until all the issues can be confronted by this Court in a unified package. This is particularly true where the adjudicated and pending claims are closely related and stem from essentially the same factual allegations."). *See also Arlinghaus*, 543 F.2d at 464 (fact that decision regarding several parties "could have a profound effect on the appeal" of the other parties counsels against entry of judgment with respect to the several parties under Rule 54(b)). We do recognize that both defendants have left their positions with the City of Joliet and it would be convenient, from their perspective, to have the allegations against them resolved as soon as possible. Nonetheless, because the district court's decision leaves open the possibility of our having to rule on the same or very similar issues on more than one occasion, we are forced to conclude that the court abused its discretion in certifying the grant of summary judgment as appealable under Rule 54(b). USG's appeal is, accordingly, dismissed.[6]

**5.** We recognize that in the appropriate circumstances "[a]n order that disposes finally of a claim against one party to the suit can be certified for an immediate appeal under the rule even if identical claims remain pending between the remaining parties." *National Metalcrafters v. McNeil*, 784 F.2d 817, 821 (7th Cir.1986). *See Banque Paribas v. Hamilton Industries Int'l, Inc.*, 767 F.2d 380, 383 (7th Cir.1985); *Walker v. Maccabees Mutual Life Ins. Co.*, 753 F.2d 599, 601 (7th Cir.1985). However, in each case, apart from a final decision, we must determine whether the district court abused its discretion in concluding that "there is no just reason for delay" of the appeal. Fed.R.Civ.P. 54(b).

"[T]he mere existence of multiple parties and the dismissal of some do not afford sufficient warrant for entry of final judgment under" Rule 54(b). *Arlinghaus v. Ritenour*, 543 F.2d 461, 463 (2d Cir.1976) (per curiam). In those cases in which we find that the district court abused its discretion in certifying a decision as appealable, the appeal must be dismissed.

**6.** Although we dismiss the appeal pursuant to Rule 54(b), we express no opinion as to whether the issue of USG's standing as against all of the defendants is one which may be appropriate for some type of interlocutory appeal.