AUTO SERVICIO SAN IGNACIO, S.R.L., et al., Plaintiffs-Appellants,

v.

COMPANIA ANONIMA VENEZOLANA De NAVEGACION (Venezuelan Line), et al., Defendants,

The AETNA CASUALTY & SURETY CO., Defendant-Third Party Plaintiff,

v.

HIBERNIA NATIONAL BANK, Third Party Defendant-Appellee.

No. 84–3460.

United States Court of Appeals, Fifth Circuit.

July 22, 1985.

Wegmann & Wegmann, Cynthia Anne Wegmann, New Orleans, La., for plaintiffs-appellants.

McClinchey, Stafford, Mintz & Cellini, Paul M. Batiza, New Orleans, La., for third party defendant-appellee.

Before GEE, TATE, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This case concerns an international letter of credit issued by the Banco de Maracaibo of Venezuela on behalf of plaintiff Auto Servicio San Ignacio, S.R.L., a Venezuelan corporation. We must decide whether an advising, confirming, and paying bank on such a letter of credit owes any duty of care under Louisiana tort law to the customer of the bank that issued the credit; whether one to two years is a reasonable length of time for the issuing bank to wait before asserting a claim against the advising, confirming, and paying bank that the credit was paid on non-conforming documents; and whether the advising, confirming, and paying bank must look beyond the face of documents complying with the terms of the credit to ascertain facts that only such a bank can determine. We answer all three questions in the negative and affirm the district court's grant of summary judgment.

## I

The facts of this case are detailed in the district court's opinion, 586 F.Supp. 259 (E.D.La.1984). We lift only those necessary to our decision.

Auto Servicio wished to purchase $106,098.48 worth of tires from an American corporation, Worldwide Tire, and arranged for payment to Worldwide with a letter of credit. Defendant Hibernia National Bank of New Orleans acted as the advising, confirming, and paying bank for the Banco de Maracaibo. Under the terms of the credit, Hibernia was to release to Worldwide a draft paying for the tires upon Worldwide's presentment of bills of lading and certain additional documents which would verify that the tires were insured and loaded aboard a ship bound for Venezuela.

The credit was issued by Banco on March 25, 1982, and on March 26, Hibernia so notified Worldwide. On April 8, one "David Smith," a representative from Worldwide, presented Hibernia with documents which seemingly complied with those required by the credit, and Hibernia issued him a draft for the required sum. Hibernia then notified Banco that it had done so, and forwarded the presented documents to Banco.

The documents, as it turned out, were forged. There were no tires, Worldwide was a sham corporation, and David Smith had cashed the draft and skipped town. On April 23, immediately after Auto Servicio discovered the fraud, Banco cabled Hibernia asking it to cancel the credit. Hibernia had debited Banco's account weeks earlier and accordingly, refused the request, explaining that it had come too late.

Auto Servicio apparently did not contest Banco's right to debit its account. Instead Auto Servicio sought relief in the federal district court in New Orleans against Hibernia Bank for its role in the transaction. This appeal concerns the district court's grant of summary judgment in favor of Hibernia on Auto Servicio's claims against it.

Although the district court conceded that there were arguably issues of material fact on the question whether Hibernia had exercised the standard of care required by La. Rev.Stat. 10:5–109 in honoring the doc-

uments presented on the letter of credit,[1] it granted summary judgment in favor of Hibernia, concluding that the duty of care owed by Hibernia as advising, confirming, and paying bank ran only to its customer, Banco, the issuer of the credit, and not to Banco's customer, Auto Servicio. In short, the court held that in light of the relationships in the letter of credit transaction as defined by Article 5 of the U.C.C., Auto Servicio's claim should have been brought against Banco, not Hibernia. The court then refused to circumvent this statutory scheme by allowing Auto Servicio to state a tort claim against Hibernia, reasoning again that although section 5–109 imposed on Hibernia a duty to examine the credit documents with care and to observe general banking usage, this duty did not run to Auto Servicio.

Auto Servicio then amended its complaint to assert the rights of Banco against Hibernia, rights acquired by assignment from Banco, and asked the district court to reconsider its grant of summary judgment. The court again granted summary judgment, explaining that La.Rev.Stat. § 10:5–112 gave Banco only three days in which to complain to Hibernia that the documents honored by Hibernia did not conform to the terms of the credit, and that Banco's failure to make such a claim within that time barred any action it might have against Hibernia. The court noted that none of Banco's telexes to Hibernia, either before or after the fraud was discovered, suggested that the documents on their face did not comply with the terms of the credit. Auto Servicio appeals.

## II

■ Auto Servicio first reurges its argument that Hibernia should be liable to it under Louisiana tort principles because Auto Servicio was one foreseeably injured by Hibernia's failure to exercise the proper care in examining the documents presented on the letter of credit. Like the district court, we are unconvinced. The district court correctly determined that to the extent there is a duty under Louisiana tort law, it is the duty of care defined by section 5–109, owed by Hibernia only to *its* customer on the letter of credit, Banco. The reasons given by the court for its refusal to expand the confirming bank's liability on a negligence theory are sound: "[It] would disrupt the letter of credit transaction as structured by [Article 5] and would hinder the commercial viability of the letter of credit. A bank in Hibernia's position would not be nearly so willing to provide its services if liability were extended to parties with whom it never dealt." 586 F.Supp. at 264. The exchange function of the letter of credit rests upon objective predictable standards with defined expectations and risks. Injecting the uncertainty of the tort principles contended for is inconsistent with these necessities and is not supported by the Code, which implicitly rejects them.

The only authority in support of Auto Servicio's theory, *Instituto National etc. v. Continental Illinois*, 530 F.Supp. 279 (N.D.Ill.1982), has been criticized, *see* U.C.C. *Survey*, 38 The Business Lawyer, 1169, 1176–78 (1983), and differs factually from the instant case. The *Continental*

---

**1.** Louisiana has adopted Article 5 of the Uniform Commercial Code. La.Rev.Stat. 10:5–109 described the obligations of a bank that pays on a letter of credit in the following terms:

(1) An issuer's obligation to its customer includes good faith and observance of any general banking usage but unless otherwise agreed does not include liability or responsibility

   (a) for performance of the underlying contract for sale or other transaction between the customer and the beneficiary; or

   (b) for any act or omission of any person other than itself or its own branch or for loss or destruction of a draft, demand or document in transit or in the possession of others; or

   (c) based on knowledge or lack of knowledge of any usage of any particular trade.

(2) An issuer must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit but unless otherwise agreed assumes no liability or responsibility for the genuineness, falsification or effect of any document which appears on such examination to be regular on its face.

court recognized a negligence action by the customer of the issuer against the confirming bank, but not on the basis that the confirming bank failed to exercise due care in examining the documents required by the letter of credit. Rather, the theory was that the confirming bank was negligent when it supervised the beneficiary's *revision* of those documents. While we are unpersuaded by its reasoning, the case is, in any event, distinguishable.

In sum, we affirm the district court's decision that Auto Servicio had no cause of action under the Louisiana tort law against Hibernia, the advising, confirming, and paying bank on the letter of credit.

### III

■ Auto Servicio also challenges the district court's grant of summary judgment in favor of Hibernia on any rights Banco may have had as Hibernia's customer. The district court reasoned that any claim Banco had against Hibernia was barred by Banco's failure to notify Hibernia of the asserted non-conformities in the documents within three days of Banco's receipt of them. The court relied on La.Rev.Stat. § 10:5–112, which provides:

> *Time allowed for honor or rejection; withholding honor or rejection by consent; presenter*

(1) A bank to which a documentary draft or demand for payment is presented under a credit may without dishonor of the draft demand or credit;

(a) defer honor until the close of the third banking day following receipt of the documents; and

(b) further defer honor if the presenter has expressly or impliedly consented thereto.

Failure to honor within the time here specified constitutes dishonor of the draft or demand and of the credit.

(2) Upon dishonor the bank may, unless otherwise instructed, fulfill its duty to return the draft or demand and the documents by holding them at the disposal of the presenter and sending him an advice to that effect.

(3) "Presenter" means any person presenting a draft or demand for payment for honor under a credit even though that person is a confirming bank or other correspondent which is acting under an issuer's authorization.

The U.C.P., *Uniform Customs and Practice for Commercial Documentary Credits*, which was expressly incorporated by reference in this letter of credit, has a provision similar to section 5–112, but the U.C.P. provision gives the issuer a "reasonable time" in which to decide whether the presented documents comply with the terms of the credit.[2] The district court

**2.** Article 8 of the U.C.P. provides in pertinent part:

(a) In documentary credit operation, all parties concerned deal in documents and not in goods.

(b) Payment, acceptance or negotiation against documents which appear on their face to be in accordance with the terms and conditions of a credit by a bank authorized to do so binds the party giving the authorization to take up the documents and reimburse the bank which has effected the payment, acceptance or negotiation.

(c) If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, that bank must determine on the basis of the documents alone whether to claim that payment, acceptance or negotiation was not effected in accordance with the terms and conditions of the credit.

(d) The issuing bank shall have a reasonable time to examine the documents and to determine as above whether to make such a claim.

(e) If such claim is to be made, notice to that effect, stating the reasons therefore, must, without delay, be given by cable or other expeditious means to the bank from which the documents have been received (the remitting bank) and such notice must state that the documents are being held at the disposal of such bank or are being returned thereto.

(f) If the issuing bank fails to hold the documents at the disposal of the remitting bank, or fails to return the documents to such bank, the issuing bank shall be precluded from claiming that the relative payment, acceptance or negotiation was not effected in accordance with the terms and conditions of the credit.

construed "reasonable" to mean "three days" as provided in section 5–112, and thus did not find a conflict between the time limits imposed by the U.C.C. and that provided by the U.C.P. On appeal Auto Servicio argues that the U.C.P.'s "reasonable time" limitation, rather than section 5–112, governs this case, and that there is an issue of material fact as to what is "reasonable."

We need not resolve the conflict, if any, between the two provisions because we hold that as a matter of law Banco failed to make a claim within a reasonable time that the documents honored by Hibernia did not conform to the terms required by the letter of credit. Hibernia paid the letter of credit on April 9, 1982 and promptly so notified Banco and forwarded the presented documents to it. By late April, when Auto Servicio had learned that the transaction was a fraud, Banco requested that Hibernia cancel the credit, but at no time did Banco ever suggest that the documents presented by David Smith did not facially conform to the terms of the credit.

Hibernia supported its motion for summary judgment with the affidavit of Zohira Estrada, the Hibernia employee who handled the letter of credit transaction. Estrada swore on September 9, 1983 that:

> The Hibernia was never notified by the issuing bank or the freight forwarder, T.R. Spedden, of any irregularity in the documents. The Hibernia never received any notice or claim from Banco de Maracaibo C.A., Caracas Branch claiming that payment was not effected in accordance with the terms and conditions of the Credit.

Indeed, as best we can determine from the record, the issue of non-conformity of the presented documents was not raised until a year after the transaction when this lawsuit was filed, and the claim was never asserted *by Banco* until the following year when the district court reconsidered its grant of summary judgment. Auto Servicio does not controvert those facts, and rests on its assertion that there is a fact issue as to what constitutes a "reasonable

time" for notification under U.C.P. Article 8.

We are not persuaded. In our view, the one to two year hiatus that intervened between the time Banco received the credit documents and time the claim of non-conformity was raised was, as a matter of law, an unreasonable delay.

### IV

Finally, Auto Servicio argues that even if Banco did not timely assert its claim that the documents did not conform, the bar of section 5–112 and U.C.P. article 8 extends only to the issue of *facial* non-conformity, and would not preclude Banco's recovery for "Hibernia's negligence or its failure to observe good banking usage or its representation that the documents were in order *when only Hibernia was in a position to know the documents were not in compliance.*" As we understand the argument, it is that Banco could waive under section 5–112 or U.C.P. article 8 only what Banco could have discovered by examination of the documents. The notification procedures do not bar, Auto Servicio argues, claims for Hibernia's negligent failure to determine what only Hibernia could have determined: that the vessel on which the tires were to be shipped had not yet arrived in New Orleans when Smith presented the bills of lading and shipping documents, and that the man who signed the commercial invoice was a local freight forwarder and not the shipper.

The argument runs counter to the principle on which all letters of credit are bottomed: that the parties are *not* required to look beyond the face of the documents presented. *See, e.g., Philadelphia Gear Corp. v. Central Bank,* 717 F.2d 230, 235 (5th Cir.1983). As we noted in *Philadelphia Gear,*

> [T]he peculiar values of the letter of credit are (1) that they provide the assurance of payment, (2) that they can provide that assurance in respect to any transaction, and (3) that they are inexpensive. These values will be lost if performance of the letter of credit is to

be infected by the nonperformance of the underlying transaction because *when* that happens the letter of credit is not an assurance of payment and because *if* that happens the cost of a letter of credit must include the issuer's problematic litigation expense.

*Id.* at 236, quoting Harfield, *The Increasing Domestic Use of the Letter of Credit,* 4 U.C.C.L.J. 251, 257 (1972) (emphasis in original). In short, in letter of credit transactions, facial compliance is, and indeed must be, the watchword. We can require no more of Hibernia here if we are to remain faithful to the statutory scheme as well as the customs and practices behind letters of credit.

We AFFIRM the summary judgment entered in favor of Hibernia Bank.