United States Court of Appeals
For the First Circuit

No. 92-2145

MUELLER COMPANY,

Plaintiff, Appellant,

v.

SOUTH SHORE BANK,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Circuit Judge,

Aldrich, Senior Circuit Judge

and Stahl, Circuit Judge.

David M. Jones with whom James E. Howard, M. Katherine Willard,

and Kirkpatrick & Lockhart were on brief for appellant.

George W. Mykulak with whom Gary R. Greenberg, Louis J. Scerra,

Jr., and Goldstein & Manello, P.C. were on brief for appellee.

April 22, 1993

STAHL, Circuit Judge. In this appeal, we must

determine whether defendant-appellee South Shore Bank ("South

Shore") properly refused plaintiff-appellant Mueller Co.'s

("Mueller") request for payment under a letter of credit.

Because the documents accompanying Mueller's request did not

comply with the requirements of the letter of credit, we

affirm the district court's ruling that the dishonor was

proper.

I.

FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

George A. Caldwell Company ("Caldwell") was a

family-owned gas and water-works supply company located in

Stoughton, Massachusetts.1 Caldwell purchased supplies on a

regular basis from Mueller, a supplier in Atlanta, Georgia.

By early 1990, Caldwell could no longer meet its payments to

Mueller, and Mueller stopped shipping supplies.

As a condition to Mueller's resumption of

shipments, Caldwell arranged for South Shore to issue an

irrevocable standby letter of credit in favor of Mueller.

The letter, dated May 24, 1990, and in the amount of

$500,000, provided that if Caldwell failed to make payments

for goods ordered and shipped after May 24, 1990, then

Mueller could present a sight draft to South Shore for

payment. The sight draft was to be accompanied by invoices

1. Caldwell is not a party to the controversy before us.

-2-
2

"clearly evidencing that the goods described in said

invoice(s) represent goods ordered and shipped after May 24,

1990."2 By its terms, the letter of credit was to be

governed by the Uniform Customs and Practice for Documentary

Credits (1983 Version) (hereinafter "UCP").

With the assurance of the standby letter of credit,

Mueller resumed shipments to Caldwell. Again, Caldwell was

unable to meet its payments. Mueller notified South Shore in

late October that it planned to draw on the letter of credit,

and sent South Shore an "aged trial balance" which listed

invoices that Mueller planned to present for payment.

2. The letter of credit stated in relevant part:

[South Shore] hereby establish[es] our irrevocable
letter of credit in [Mueller's] favor available by
your drafts drawn at sight and accompanied by
documents specified below:

1. A statement on the letterhead of Mueller
Company, addressed as per this letter of credit,
signed by an individual or individuals purporting
to be authorized, stating: "Payment has been
demanded of George A. Caldwell, 213 Turnpike
Street, Stoughton, Ma. 02072-0006, not received and
is still outstanding for more than 60 days from the
relative invoice date(s). Our demand relates
solely to goods ordered and shipped after May 24,
1990."

2. Copy(ies) of invoice(s) issued by Mueller
Company purporting to represent the above
transaction, marked "unpaid" and clearly evidencing
that the goods described in said invoice(s)
represent goods ordered and shipped after May 24,
1990.

-3-
3

On December 31, 1990, the expiration date of the

letter of credit, Mueller presented a sight draft to South

Shore in the amount of $221,996.11. The draft was

accompanied by 163 invoices purporting to represent goods

ordered and shipped after May 24, 1990. A considerable

number of the invoices, however, listed order dates prior to

May 24, 1990. South Shore sent a timely letter to Mueller

refusing to honor the draft on the grounds that the

"[i]nvoices presented do not clearly evidence that goods

described represent goods ordered and shipped after May 24,

1990 as per . . . the letter of credit."

Mueller thereafter filed a diversity action in

district court, alleging that South Shore wrongfully

dishonored the draft, arguing, inter alia, that South Shore

knew or should have known that the invoices represented goods

ordered and shipped after May 24, 1990. Upon motion for

summary judgment by South Shore, the district court dismissed

Mueller's cause of action on the grounds that the invoices

submitted by Mueller did not comply with the terms of the

letter of credit. For the reasons that follow, we affirm.

II.

DISCUSSION

A. Dishonor of the Draft

Under the provisions of the UCP, "[b]anks must

examine all documents with reasonable care to ascertain that

-4-
4

they appear, on their face, to be in accordance with the

terms and conditions of the credit." UCP, Art. 15.

Moreover, letters of credit "by their nature, are

transactions separate from the sales or other contract(s) on

which they may be based, and banks are in no way concerned

with or bound by such contract(s)." UCP, Art. 3. See also

Ground Air Transfer, Inc. v. Westates Airlines, Inc., 899

F.2d 1269, 1272 (1st Cir. 1990) ("[C]ourts have typically

considered the letter of credit as `independent' of the

contract."). Thus, in determining their rights and

obligations under a letter of credit, "parties are not

required to look beyond the face of the documents presented."

Auto Servicio San Ignacio, S.R.L. v. Compania Anonima

Venezolana de Navegacion, 765 F.2d 1306, 1310 (5th Cir. 1985)

(emphasis in original). See also UCP, Art. 4 ("[A]ll parties

concerned deal in documents, not in goods, services and/or

other performances to which the documents may relate."). I n

this case, the letter of credit required that the sight draft

be accompanied by invoices "clearly evidencing" that the

goods were "ordered and shipped after May 24, 1990."3

3. Mueller argues that the qualifying term "after May 24,
1990" applies only to "shipped," and not to "ordered."
Obviously, goods would not be shipped without being ordered
at some date, and if the phrase were read as meaning that the
date was of no consequence, there would be no point to the
word "ordered" being present at all. Accordingly, we agree
with the district court that the term "after May 24, 1990"
unambiguously modifies both "shipped" and "ordered."

-5-
5

Surely, an invoice with an order date prior to May 24, 1990

does not "clearly evidence" an order placed after that date.

Rather, such an invoice directly contradicts the terms of the

letter of credit.4 In contending that South Shore knew or

should have known that these invoices represented goods that

had been reordered and shipped subsequent to May 24, 1990,

Mueller is essentially urging that South Shore should have

looked beyond the face of invoices to the underlying

transaction. As we have stated, however, South Shore was

under no such obligation. See, e.g., Auto Servicio, 765 F.2d

at 1310; UCP, Art. 4. Because the invoices failed to meet

the requirements of the letter of credit, we find that

dishonor was proper.

B. Additional Arguments

4. We disagree with Mueller's characterization of the
improper order dates as "technical inconsistencies." See,

e.g., Exotic Traders Far East Buying Office v. Exotic Trading

U.S.A., Inc., 717 F. Supp. 14, 17 (D. Mass. 1989). Unlike

the documents in Exotic Traders which the district court

found "could not have misled anyone," id., the non-conforming

order dates in the instant case signaled that the goods had
been ordered prior to May 24, 1990. By its terms, the letter

of credit did not bind South Shore to honor such invoices.
Moreover, we reject Mueller's argument that South Shore
could or should have relied on the "invoice" dates, rather
than the "order" dates, in determining whether the invoices
complied with the letter of credit. While it appears that
most or all of the invoices had invoice dates after May 24,
1990, the nonconforming order dates were sufficient to
justify dishonor. See, e.g., UCP, Art. 15 ("Documents that

appear, on their face, to be inconsistent with one another
will be considered as not appearing, on their face, to be in
accordance with the terms of the letter of credit.").

-6-
6

Our ruling that dishonor was proper, as the

district court properly pointed out below, is dispositive of

Mueller's additional arguments.

We reject Mueller's contention that the invoices

with valid order dates constituted separate or partial

drawings on the letter of credit. While the letter of credit

did allow partial drawings, Mueller chose to draw upon the

letter of credit only once with a single sight draft

presented on the letter's expiration date. Mueller directs

us to no authority, nor have we located any, which stands for

the proposition that an issuing bank must pay a portion of a

documentary sight draft on the grounds that some of the

documents comply. Because the "valid" invoices presented did

not meet the amount of the sight draft, the bank properly

declined to honor the entire draft.

Finally, we find nothing in the record to support

Mueller's contention that the dishonor amounted to bad faith

or an unfair business practice.5

5. In arguing that South Shore's dishonor was in bad faith,
Mueller relies almost exclusively on the fact that Caldwell
expressed an initial willingness to waive the documentary
discrepancies between the invoices and the letter of credit.
This argument is based on a misunderstanding of the doctrine
of waiver as it applies to letter of credit transactions.
While Caldwell may waive its own right to insist on strict

compliance, it may not waive South Shore's right in this
respect. See e.g., Cooperative Agricole Groupement de

Producteurs Bovins de L'Ouest v. Banesto Banking Corp., 1989

WL 82454, *23 (S.D.N.Y. July 19, 1989) ("Any waiver by the
[customer] merely effects the contract between the bank and
the [customer]. Any other interpretation of the waiver

-7-
7

III.

CONCLUSION

Because Mueller has presented no genuine issue as

to any material fact, the entry of summary judgment in favor

of South Shore was proper as a matter of law. Accordingly,

the order of the district court is

Affirmed.

doctrine would emasculate the UCP requirements for amending a
letter of credit."). Accordingly, we find no merit in
Mueller's argument that Caldwell's willingness to waive
indicates that South Shore proceeded in bad faith.
Equally unavailing is Mueller's estoppel argument.
Mueller's late October letter, which included the "aged trial
balance," and which stated that Mueller intended to draw on
the letter of credit, did not include any actual invoices.
Thus, South Shore's failure to object to the October
notification letter did not estop it from later rejecting the
draft due to nonconforming invoices.
To the extent that Mueller makes other waiver, bad
faith, or estoppel claims, we find them to be without merit.

-8-
8