USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 92-2145 MUELLER COMPANY, Plaintiff, Appellant, v. SOUTH SHORE BANK, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Aldrich, Senior Circuit Judge ____________________ and Stahl, Circuit Judge. _____________ ____________________ David M. Jones with whom James E. Howard, M. Katherine Willard, _______________ ________________ ____________________ and Kirkpatrick & Lockhart were on brief for appellant. ______________________ George W. Mykulak with whom Gary R. Greenberg, Louis J. Scerra, __________________ __________________ ________________ Jr., and Goldstein & Manello, P.C. were on brief for appellee. ___ _________________________ ____________________ April 22, 1993 ____________________ STAHL, Circuit Judge. In this appeal, we must _____________ determine whether defendant-appellee South Shore Bank ("South Shore") properly refused plaintiff-appellant Mueller Co.'s ("Mueller") request for payment under a letter of credit. Because the documents accompanying Mueller's request did not comply with the requirements of the letter of credit, we affirm the district court's ruling that the dishonor was proper. I. I. __ FACTUAL BACKGROUND AND PRIOR PROCEEDINGS FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ________________________________________ George A. Caldwell Company ("Caldwell") was a family-owned gas and water-works supply company located in Stoughton, Massachusetts.1 Caldwell purchased supplies on a regular basis from Mueller, a supplier in Atlanta, Georgia. By early 1990, Caldwell could no longer meet its payments to Mueller, and Mueller stopped shipping supplies. As a condition to Mueller's resumption of shipments, Caldwell arranged for South Shore to issue an irrevocable standby letter of credit in favor of Mueller. The letter, dated May 24, 1990, and in the amount of $500,000, provided that if Caldwell failed to make payments for goods ordered and shipped after May 24, 1990, then Mueller could present a sight draft to South Shore for payment. The sight draft was to be accompanied by invoices ____________________ 1. Caldwell is not a party to the controversy before us. -2- 2 "clearly evidencing that the goods described in said invoice(s) represent goods ordered and shipped after May 24, 1990."2 By its terms, the letter of credit was to be governed by the Uniform Customs and Practice for Documentary Credits (1983 Version) (hereinafter "UCP"). With the assurance of the standby letter of credit, Mueller resumed shipments to Caldwell. Again, Caldwell was unable to meet its payments. Mueller notified South Shore in late October that it planned to draw on the letter of credit, and sent South Shore an "aged trial balance" which listed invoices that Mueller planned to present for payment. ____________________ 2. The letter of credit stated in relevant part: [South Shore] hereby establish[es] our irrevocable letter of credit in [Mueller's] favor available by your drafts drawn at sight and accompanied by documents specified below: 1. A statement on the letterhead of Mueller Company, addressed as per this letter of credit, signed by an individual or individuals purporting to be authorized, stating: "Payment has been demanded of George A. Caldwell, 213 Turnpike Street, Stoughton, Ma. 02072-0006, not received and is still outstanding for more than 60 days from the relative invoice date(s). Our demand relates solely to goods ordered and shipped after May 24, 1990." 2. Copy(ies) of invoice(s) issued by Mueller Company purporting to represent the above transaction, marked "unpaid" and clearly evidencing that the goods described in said invoice(s) represent goods ordered and shipped after May 24, 1990. -3- 3 On December 31, 1990, the expiration date of the letter of credit, Mueller presented a sight draft to South Shore in the amount of $221,996.11. The draft was accompanied by 163 invoices purporting to represent goods ordered and shipped after May 24, 1990. A considerable number of the invoices, however, listed order dates prior to May 24, 1990. South Shore sent a timely letter to Mueller refusing to honor the draft on the grounds that the "[i]nvoices presented do not clearly evidence that goods described represent goods ordered and shipped after May 24, 1990 as per . . . the letter of credit." Mueller thereafter filed a diversity action in district court, alleging that South Shore wrongfully dishonored the draft, arguing, inter alia, that South Shore _____ ____ knew or should have known that the invoices represented goods ordered and shipped after May 24, 1990. Upon motion for summary judgment by South Shore, the district court dismissed Mueller's cause of action on the grounds that the invoices submitted by Mueller did not comply with the terms of the letter of credit. For the reasons that follow, we affirm. II. II. ___ DISCUSSION DISCUSSION __________ A. Dishonor of the Draft _________________________ Under the provisions of the UCP, "[b]anks must examine all documents with reasonable care to ascertain that -4- 4 they appear, on their face, to be in accordance with the terms and conditions of the credit." UCP, Art. 15. Moreover, letters of credit "by their nature, are transactions separate from the sales or other contract(s) on which they may be based, and banks are in no way concerned with or bound by such contract(s)." UCP, Art. 3. See also ___ ____ Ground Air Transfer, Inc. v. Westates Airlines, Inc., 899 ___________________________ ________________________ F.2d 1269, 1272 (1st Cir. 1990) ("[C]ourts have typically considered the letter of credit as `independent' of the contract."). Thus, in determining their rights and obligations under a letter of credit, "parties are not ___ required to look beyond the face of the documents presented." Auto Servicio San Ignacio, S.R.L. v. Compania Anonima ______________________________________ _________________ Venezolana de Navegacion, 765 F.2d 1306, 1310 (5th Cir. 1985) ________________________ (emphasis in original). See also UCP, Art. 4 ("[A]ll parties ___ ____ concerned deal in documents, not in goods, services and/or other performances to which the documents may relate."). I n this case, the letter of credit required that the sight draft be accompanied by invoices "clearly evidencing" that the goods were "ordered and shipped after May 24, 1990."3 ____________________ 3. Mueller argues that the qualifying term "after May 24, 1990" applies only to "shipped," and not to "ordered." Obviously, goods would not be shipped without being ordered at some date, and if the phrase were read as meaning that the date was of no consequence, there would be no point to the word "ordered" being present at all. Accordingly, we agree with the district court that the term "after May 24, 1990" unambiguously modifies both "shipped" and "ordered." -5- 5 Surely, an invoice with an order date prior to May 24, 1990 _____ does not "clearly evidence" an order placed after that date. Rather, such an invoice directly contradicts the terms of the letter of credit.4 In contending that South Shore knew or should have known that these invoices represented goods that had been reordered and shipped subsequent to May 24, 1990, _________ Mueller is essentially urging that South Shore should have looked beyond the face of invoices to the underlying transaction. As we have stated, however, South Shore was under no such obligation. See, e.g., Auto Servicio, 765 F.2d ___ _____ _____________ at 1310; UCP, Art. 4. Because the invoices failed to meet the requirements of the letter of credit, we find that dishonor was proper. B. Additional Arguments ________________________ ____________________ 4. We disagree with Mueller's characterization of the improper order dates as "technical inconsistencies." See, ___ e.g., Exotic Traders Far East Buying Office v. Exotic Trading ____ _____________________________________ ______________ U.S.A., Inc., 717 F. Supp. 14, 17 (D. Mass. 1989). Unlike ____________ the documents in Exotic Traders which the district court _______________ found "could not have misled anyone," id., the non-conforming ___ order dates in the instant case signaled that the goods had been ordered prior to May 24, 1990. By its terms, the letter _____ of credit did not bind South Shore to honor such invoices. Moreover, we reject Mueller's argument that South Shore could or should have relied on the "invoice" dates, rather than the "order" dates, in determining whether the invoices complied with the letter of credit. While it appears that most or all of the invoices had invoice dates after May 24, 1990, the nonconforming order dates were sufficient to justify dishonor. See, e.g., UCP, Art. 15 ("Documents that ___ ____ appear, on their face, to be inconsistent with one another will be considered as not appearing, on their face, to be in accordance with the terms of the letter of credit."). -6- 6 Our ruling that dishonor was proper, as the district court properly pointed out below, is dispositive of Mueller's additional arguments. We reject Mueller's contention that the invoices with valid order dates constituted separate or partial drawings on the letter of credit. While the letter of credit did allow partial drawings, Mueller chose to draw upon the letter of credit only once with a single sight draft presented on the letter's expiration date. Mueller directs us to no authority, nor have we located any, which stands for the proposition that an issuing bank must pay a portion of a _______ documentary sight draft on the grounds that some of the ____ documents comply. Because the "valid" invoices presented did not meet the amount of the sight draft, the bank properly declined to honor the entire draft. Finally, we find nothing in the record to support Mueller's contention that the dishonor amounted to bad faith or an unfair business practice.5 ____________________ 5. In arguing that South Shore's dishonor was in bad faith, Mueller relies almost exclusively on the fact that Caldwell expressed an initial willingness to waive the documentary discrepancies between the invoices and the letter of credit. This argument is based on a misunderstanding of the doctrine of waiver as it applies to letter of credit transactions. While Caldwell may waive its own right to insist on strict ___ compliance, it may not waive South Shore's right in this respect. See e.g., Cooperative Agricole Groupement de ___ ____ _____________________________________ Producteurs Bovins de L'Ouest v. Banesto Banking Corp., 1989 _____________________________ _____________________ WL 82454, *23 (S.D.N.Y. July 19, 1989) ("Any waiver by the [customer] merely effects the contract between the bank and the [customer]. Any other interpretation of the waiver -7- 7 III. III. ____ CONCLUSION CONCLUSION __________ Because Mueller has presented no genuine issue as to any material fact, the entry of summary judgment in favor of South Shore was proper as a matter of law. Accordingly, the order of the district court is Affirmed. ________ ____________________ doctrine would emasculate the UCP requirements for amending a letter of credit."). Accordingly, we find no merit in Mueller's argument that Caldwell's willingness to waive indicates that South Shore proceeded in bad faith. Equally unavailing is Mueller's estoppel argument. Mueller's late October letter, which included the "aged trial balance," and which stated that Mueller intended to draw on the letter of credit, did not include any actual invoices. Thus, South Shore's failure to object to the October notification letter did not estop it from later rejecting the draft due to nonconforming invoices. To the extent that Mueller makes other waiver, bad faith, or estoppel claims, we find them to be without merit. -8- 8